UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: TRINITY LEGACY CONSORTIUM, LLC,                    No. 22-10973-j11

Debtor.

## **<u>MEMORANDUM OPINION</u>**

On August 11, 2023, debtor Trinity Legacy Consortium, LLC ("Debtor") filed its *Motion to Further Extend Time to File Subchapter V Plan* (the "Motion to Extend" – Doc. 258), which seeks to extend the deadline under 11 U.S.C. § 1189(b) for Debtor to file its subchapter V plan from August 24, 2023 to October 23, 2023.[1,2] Two creditors (the "Objecting Parties") filed objections to the Motion to Extend (the "Objections" – Docs. 261 & 268), and Debtor filed a reply (Doc. 276). After granting an interim extension through September 22, 2023, *see* Doc. 262, the Court held a final hearing on the Motion to Extend on September 12, 2023 (the "Final Hearing"). On September 18, 2023, in light of the then-approaching expiration of the interim extension and to give the parties fair advance notice of the deadline for Debtor to file a plan, the Court filed a status report indicating that it intended to grant the requested extension. Doc. 285.

Debtor did not proffer any evidence at the Final Hearing, relying instead on the record in this bankruptcy case and representations of counsel. Neither of the Debtor's principals appeared at the hearing, and no testimony was taken. The Court on its own initiative took judicial notice of the docket in this bankruptcy case and all documents filed on the docket. The Court hereby takes further judicial notice of all status conferences and hearings held in this bankruptcy case.

---

[1] References to the "Bankruptcy Code" or the "Code" are to title 11 of the United States Code. Unless otherwise specified, references to "section __" or "§__" are to sections of the Bankruptcy Code, and references to "subchapter V" are to subchapter V of chapter 11 of the Bankruptcy Code.

[2] References to the "Bankruptcy Rules" or the "Rules" are to the Federal Rules of Bankruptcy Procedure.

## PROCEDURAL HISTORY AND FINDINGS BASED ON THE RECORD

Debtor operates a construction and home building business with locations in Farmington, New Mexico and Wallowa, Oregon. *See* Doc. 275. Debtor commenced this case under subchapter V of chapter 11 on December 7, 2022. Unless extended, the 90-day period for Debtor to file a plan would have expired on March 7, 2023. On January 4, 2023, Debtor filed an amended petition for relief in which Debtor deselected subchapter V. On February 2, 2023, Debtor retained new bankruptcy counsel and filed a second amended petition reselecting subchapter V.

Facing highly contentious and expensive dischargeability litigation with numerous creditors, on April 28, 2023, Debtor filed a motion to convert this chapter 11 case to a case under chapter 7 and submitted an order of conversion to the Court for entry. Instead of entering the order, the Court held a status conference. It appeared to the Court that both Debtor and its major creditors might be substantially better off if Debtor could negotiate a consensual plan with most of its major creditors.[3] Most of the major creditors have homes that were under construction by Debtor when this chapter 11 case was filed. It appeared to the Court that although creditors who are parties to executory construction contracts would receive a minimal, if any, distribution if this case were converted to chapter 7, through negotiations and Debtor's continued operations they potentially may fare substantially better. The Court scheduled a status conference to ask

---

[3] The claims register reflects claims of almost $5 million, of which approximately 95% are nonpriority unsecured claims. Debtor's schedules reflect assets with a total value of less than $300,000, all of which are pledged as collateral. Debtor's schedules do not give a good picture of the amount of claims against the estate because many of the major creditors are included in Schedule G, which lists executory contracts and unexpired leases, without listing the unsecured claim amounts the parties would have should the contracts be rejected. The claims register therefore more accurately represents creditors' financial stake in this bankruptcy case.

Debtor and its creditors about the possibility of mediation instead of an immediate conversion of the case to chapter 7.

Debtor and at least six of its creditors expressed a desire to engage in mediation, and the Court entered a mediation order on May 1, 2023. With the consent of the parties, the Court appointed Bankruptcy Judge David T. Thuma as mediator (the "Mediator"). Debtor and six creditors proceeded to engage in mediation. Five of the six creditors filed proofs of claim totaling $3,689,624, representing about 75% in dollar amount of all claims filed in this case.[4] A mediation was held on June 15 and 16, 2023 and continues with respect to certain creditors.

The Mediator filed a first interim mediation report (Doc. 242) on June 16, 2023, stating that Debtor reached settlements with four of the six creditors and the settlements have the effect of eliminating or substantially reducing the claims of Builders FirstSource and Enercept, Inc. against the estate. Builders FirstSource filed a claim in the amount of $85,992; and Enercept, Inc. filed a claim in the amount of $71,110.09, which it later withdrew. *See* Claims 7 & 19. The first mediation report also stated that although no settlement has been reached with the other two creditors (the Johnstons and Sacketts), the mediation is continuing as to those creditors. The Johnstons filed a claim in the amount of $2,833,499, and the Sacketts filed a claim in the amount of $437,256. *See* Claims 13 & 21.

The Mediator filed a second report on July 27, 2023. Doc. 257. The second report states:

> The mediator is continuing to work with these parties [referring to the Debtor, Johnstons, and Sacketts]. Settlement offers have been exchanged, some subject to reasonable documentary proof of allegations made by the other party. Documents supporting the Debtor/Swifts' position have been promised by August 7, 2023. The mediator will continue to work with the parties toward settlement.

———

---

[4] The sixth creditor, Chambers Squier-Okanzak and Wesley Okonzak, have not filed a claim and the amount of their claim is not in evidence.

The Mediator's third report, filed September 11, 2023 (Doc. 277), states in relevant part:

The mediator is continuing to work with these parties [referring to the Debtor, Johnstons, and Sacketts]. The Swifts [Debtor's principals] have made settlement offers to the Johnstons and the Sacketts. The offers required substantial documentary backup. The mediator worked with the Swifts extensively in connection with the documentary backup for the Johnston offer. The documents were produced to the Johnstons' counsel last week. The Swifts are awaiting a response to their settlement offer. The mediator will follow up with the Johnstons' counsel about the response.

With respect to the offer to the Sacketts, the mediator is now working with the Swifts to produce the backup documents. The mediator anticipates that the documents should be ready to produce to the Sacketts by September 21, 2023.

The mediator will update this report before September 30, 2023.

_____

Prior to the current Motion to Extend, the Court entered four orders extending the time for Debtor to file a plan pursuant to § 1189(b). Each order was entered after notice and without objection by any party in interest. The orders extended the deadline to file a plan as follows:

First extension order[5] extended the time until May 2, 2023;
Second extension order[6] extended the time until June 16, 2023;
Third extension order[7] extended the time until July 10, 2023; and
Fourth extension order[8] extended time to August 24, 2023.

With the exception of the first order extending the time, the basis for the extensions was to allow further time for negotiations between Debtor and the creditors participating in the mediation.

Following Debtor's filing of the Motion to Extend, the Court *sua sponte* granted an interim extension to September 22, 2023 in view of the prior extensions granted without objection and to give Debtor an opportunity to file a plan if the Court denied Debtor's request to extend the time until October 23, 2023. *See* Doc. 262. At a time when only the first Objection

_____

[5] Doc. 139, entered March 3, 2023.

[6] Doc. 218, entered May 1, 2023.

[7] Doc. 240, entered June 12, 2023.

[8] Doc. 254, entered July 13, 2023.

was pending, the Subchapter V Trustee filed a statement (Doc. 263) in support of Debtor's

Motion to Extend, in which the Trustee commented:

> Given the success of the mediation proceedings to date, the Subchapter V trustee believes a further extension of time until October 22, 2023 [*sic*] may allow the parties an opportunity to resolve the remaining disputes and allow for the filing of a consensual Plan.
>
> The Plan filing deadline has already been extended through September 22, 2023 and an additional 30 day extension will not unduly impact the rights of [the first Objecting Party].

———

## DISCUSSION

The Court will begin by examining the standard it should apply to determine whether it may extend the period to file a plan under § 1189(b) and then will apply the standard to the circumstances of this case. In selecting the appropriate standard, the Court is guided by the reasoning of the U.S. Supreme Court in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*.[9]

*§ 1189(b) governs extensions of the time to file a subchapter V plan.*

Section 1189(b) requires a debtor to file a plan within 90 days after commencement of the chapter 11 case, "except that the court may extend the period if the need for the extension is attributable to circumstances for which the debtor should not justly be held accountable." The debtor has the burden of establishing a basis for the extension.[10] Courts agree that § 1189(b)

---

[9] *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993).

[10] *E.g., In re Majestic Gardens Condo. C Ass'n, Inc*., 637 B.R. 755, 756 (Bankr. S.D. Fla. 2022); *In re Seven Stars on the Hudson Corp.*, 618 B.R. 333, 344 (Bankr. S.D. Fla. 2020); *In re HBL SNF, LLC*, 635 B.R. 725, 729 (Bankr. S.D.N.Y. 2022).

imposes a stricter standard than the "for cause" standard set forth in § 1121(d)(1) that governs extensions of time to file a plan in chapter 11 cases not governed by subchapter V.[11]

Although the phrase "circumstances for which the debtor should not justly be held accountable" used in § 1189(b) is not new to the Bankruptcy Code,[12] the Code does not define or provide guidelines to determine the circumstances contemplated by § 1189(b) for which the debtor should not justly be held accountable.

Courts are split regarding what constitutes "circumstances for which the debtor should not justly be held accountable" under § 1189(b). The disagreement centers around whether the court may only consider whether the delay was due to circumstances beyond the debtor's reasonable control or whether the court can take other things into account that relate to the subchapter V case, such as undue prejudice, lack of good faith, or whether the debtor has made progress in drafting a plan. This Court will begin by examining *Pioneer*, in which the U.S. Supreme Court confronted a similar split regarding what constitutes "excusable neglect" under Rule 9006(b)(1).[13]

*Pioneer applied an equitable inquiry in an analogous context.*

*Pioneer* involved unsecured creditors that filed proofs of claim in a chapter 11 case 20 days after the bar date and whether the time to file a claim should have been extended under the excusable neglect standard set forth in Rule 9006(b)(1).[14] In the lead-up to *Pioneer*, courts

---

[11] *HBL SNF*, 635 B.R. at 729 (§ 1189(b) imposes a stricter standard than the "for cause" standard); *In re Online King LLC*, 629 B.R. 340, 349-50 (Bankr. E.D.N.Y. 2021) (same).

[12] Prior to the enactment of § 1189, the phrase "circumstances for which the debtor should not justly be held accountable" was already included in § 1221 governing extensions of the time to file a chapter 12 plan, as well as §§ 1228(b)(1) and 1328(b)(1) regarding the grant of a hardship discharge in chapter 12 and 13 cases, respectively.

[13] *Pioneer*, 507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74.

[14] 507 U.S. at 384, 113 S. Ct. at 1492.

agreed that "excusable neglect" (like § 1189(b)) was a higher standard than "cause,"[15] but there was a circuit split regarding whether, in applying the "excusable neglect" standard, the court may only consider if the delay was due to circumstances beyond the movant's reasonable control or may also consider equitable principles to balance the interests of the affected parties.[16]

The Supreme Court rejected the "beyond the movant's reasonable control" standard, holding that bankruptcy courts should make an equitable inquiry to determine whether the neglect was excusable, taking account of all relevant circumstances:

> Because Congress has provided no other guideposts for determining what sorts of neglect will be considered "excusable," we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include, as the Court of Appeals found, the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.[17]

In making this determination, after examining the history of Rule 9006, the Supreme Court

---

[15] *E.g., In re City of Detroit, Michigan*, 576 B.R. 552, 558 (Bankr. E.D. Mich. 2017) ("'Excusable neglect' under Rule 9006(b)(1) is a more demanding requirement than the general concept of 'cause' that is used in various places in the Bankruptcy Code and Bankruptcy Rules[.]").

[16] The Eleventh Circuit had held that the "excusable neglect" standard under Rule 9006(b) requires that "the failure to timely perform a duty was due to circumstances beyond the reasonable control of the person whose duty it was to perform" without regard to the impact of the decision. *In re S. Atl. Fin. Corp.*, 767 F.2d 814, 817-19 (11th Cir. 1985), *cert. denied*, 475 U.S. 1015, 106 S. Ct. 1197, 89 L. Ed. 2d 311 (1986). The Third and Fourth Circuits had held that the excusable neglect requirement precludes any exceptions based on general equitable principles regardless of whether that would produce harsh results. *In re Davis*, 936 F.2d 771, 774 (4th Cir. 1991); *In re Vertientes, Ltd.*, 845 F.2d 57, 60 (3d Cir. 1988). The Sixth and Ninth Circuits had rejected the view that excusable neglect under Rule 9006(b) only permits consideration of whether the failure to timely perform was due to circumstances beyond the reasonable control of the movant and instead adopted a five-factor test requiring consideration of the prejudicial effect of granting the extension, the length of the delay and its impact on efficient court administration, whether the delay was beyond the reasonable control of the person whose duty it was to perform, whether the party seeking the extension acted in good faith, and whether clients should be penalized for their counsel's mistake or neglect. *In re Pioneer Inv. Servs. Co.*, 943 F.2d 673, 677 (6th Cir. 1991) (applying the five-factor test as an aid to case-by-case adjudication), *aff'd sub nom. Pioneer*, 507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74; *In re Dix*, 95 B.R. 134, 138 (9th Cir. BAP 1988).

[17] *Pioneer*, 507 U.S. at 395, 113 S. Ct. at 1498. The Supreme Court also held that an inadvertent error made by the debtor's chosen counsel constitutes "neglect" attributable to the debtor. 507 U.S. at 396-97, 113 S. Ct. at 1499.

construed the "excusable neglect" standard as an equitable inquiry after taking into account that "the bankruptcy courts are necessarily entrusted with broad equitable powers to balance the interests of the affected parties, guided by the overriding goal of ensuring the success of the reorganization."[18]

*Three approaches taken by bankruptcy courts on extending time under § 1189(b).*

With the backdrop of *Pioneer*, the Court will examine three approaches taken by different bankruptcy courts who have considered whether the need to extend the time to file a subchapter V plan is "attributable to circumstances for which the debtor should not justly be held accountable" under § 1189(b).

(i)     *First approach: circumstances beyond the debtor's control.*

Several courts have equated "circumstances for which the debtor should not justly be held accountable" with "circumstances beyond the debtor's control."[19] *In re Majestic Gardens Condo. C Ass'n* is an example of a case applying a "circumstances beyond the debtor's control" test. The case involved a subchapter V debtor that operated a forty-one unit condominium community. The debtor filed its plan three days after the 90-day deadline specified by § 1189(b) due to a calendaring error by a paralegal in debtor's chapter 11 counsel's law firm. The court equated "circumstances for which the debtor should not justly be held accountable" with "circumstances beyond the debtor's control"[20] and quoted *Pioneer* for the proposition that clients are "accountable for the acts and omissions of their chosen counsel."[21] The Court concluded,

---

[18] *Id.* at 389.

[19] *E.g., In re Majestic Gardens Condo. C Ass'n, Inc.*, 637 B.R. 755, 756 (Bankr. S.D. Fla. 2022) (Russin, J.); *In re Keffer*, 628 B.R. 897, 910 (Bankr. S.D.W. Va. 2021); *In re Seven Stars on the Hudson Corp.*, 618 B.R. 333, 346 (Bankr. S.D. Fla. 2020) (Grossman, J.).

[20] *Majestic Gardens*, 637 B.R. at 756.

[21] *Id.* at 757 (quoting *Pioneer*, 507 U.S. at 397, 113 S. Ct. at 1499).

-8-

therefore, that "debtor's counsel's calendaring error does not justify an extension of the § 1189(b) deadline."[22] The "circumstances beyond the debtor's control" test made irrelevant any equitable considerations, including the harshness of the result, prejudice or lack of prejudice to creditors, the length of the delay, the debtor's good faith, and the impact of termination of the subchapter V case on creditors and the residents of the condominium community. *In re Seven Stars on the Hudson Corp.* is another decision applying the strict "circumstances beyond the debtor's control test" which has been discussed extensively in the caselaw.[23]

        *(ii)    Second approach: the four-factor Baker test.*

The court in *Baker* took a different approach.[24] The court adopted a four-factor test to determine whether to extend the time to file a subchapter V plan under § 1189(b): "(1) whether the circumstances raised by Debtor were within his control, (2) whether Debtor has made progress in drafting a plan, (3) whether the deficiencies preventing that draft from being filed are reasonably related to the identified circumstances, and (4) whether any party-in-interest has moved to dismiss or convert Debtor's case or otherwise objected to a deadline extension in any way."[25] Applying these factors, the *Baker* court granted the requested extension of time.[26]

---

[22] *Majestic Gardens*, 637 B.R. at 757.

[23] *Seven Stars,* 618 B.R. 333.

[24] *In re Baker*, 625 B.R. 27 (Bankr. S.D. Tex. 2020).

[25] *Id.* at 35.

[26] *Id.* at 36-41. In *Baker*, the debtor filed a second motion under § 1189(b) to extend the time to file a subchapter V plan because it did not make sense to file a plan where two governmental units had not yet filed proofs of claim and the bar date for timely filing had not passed because the claim amounts would drastically change the plan. Debtor's counsel failed to notice that the bar date for governmental claims was erroneously omitted from a notice that should have contained the bar date due to a technological error not attributable to counsel. Had counsel brought the missing governmental bar date deadline to the court's attention earlier a second request to extend the time to file a plan could have been avoided. The Debtor also attributed his delay in filing a plan to the death of his brother which diverted his attention from his statutory duty to file a plan.

*(iii)    Third approach: an equitable inquiry.*

Finally, other courts have considered equitable factors in determining whether to grant an extension under § 1189(b).[27] The decision that sets forth the most comprehensive analysis in making an equitable inquiry is *In re Trepetin*.[28] *Trepetin* involved a debtor that filed a motion to convert his chapter 7 case to a case under the then relatively newly enacted subchapter V. In the view of the *Trepetin* court, because the 90-day deadline to file a subchapter V plan ran from the date of commencement of the chapter 7 case, to proceed under subchapter V the debtor needed an extension of time to file a subchapter V plan.

The *Trepetin* court observed that "Congress contemplated an accelerated process for Subchapter V cases, likely as a means to facilitate quicker and cheaper reorganizations" but "Congress also expressed . . . significant concern for small business debtors, wanting to provide them with a realistic option for reorganizing and saving their business operations."[29] The court decided that it should "strive to balance these goals of speed and access to a realistic reorganization scheme in applying the language of the Code to the facts of this case."[30] In this context, the court consulted the dictionary definitions of "justly" and "accountable," noting that "'justly' in this context is commonly defined as 'in accordance with justice, law, or fairness' and 'accountable' as 'responsible' or 'liable to be called to account or to answer for responsibilities and conduct.'"[31]

---

[27] *In re Trepetin*, 617 B.R. 841, 848-50 (Bankr. D. Md. 2020); *see also In re HBL SNF, LLC*, 635 B.R. 725, 730 (Bankr. S.D.N.Y. 2022) (considering prejudice to the parties); *In re Greater Blessed Assurance Apostolic Temple, Inc.*, 624 B.R. 742, 746 (Bankr. M.D. Fla. 2020) (considering prejudice to creditors).

[28] *Trepetin*, 617 B.R. 841.

[29] *Id.* at 846-47.

[30] *Id.* at 847.

[31] *Id.* at 849.

-10-

The *Trepetin* court concluded that the relevant inquiry in the case was "whether the debtor is fairly responsible for his inability to . . . file a plan in this Subchapter V case [within the 90-day period set forth in § 1189(b)]."[32] To apply this standard and strike the correct balance of the goals of speed and access to a realistic reorganization scheme, the court took into account whether the debtor manipulated the timing of his bankruptcy case, potential prejudice to creditors, and whether the debtor complied with his obligations under the Code.[33] Although the debtor waited over four months after the effective date of the amendments enacting subchapter V to file the motion to convert his chapter 7 case to a case under subchapter V, the court determined that "on balance . . . the Debtor should have access to Subchapter V of the Code and has established adequate grounds to extend the deadlines imposed by sections 1188 and 1189 of the Code in this case."[34]

*Trepetin* purports to follow the "circumstances beyond the debtor's control" test in the first approach described above.[35] However, in this Court's view, the standard *Trepetin* applies does not follow the "circumstances beyond the debtor's control" test; it involves an equitable inquiry.[36] Both approaches consider whether the circumstances were beyond the debtor's control but if the only consideration is whether the circumstances causing the need for the extension were beyond the debtor's control, then striking a balance between the goal of speed and the goal of access to a realistic reorganization scheme; potential prejudice to creditors; and whether the

---

[32] *Id*.

[33] *Id.* at 850.

[34] *Id*. at 849-50.

[35] *Id*. at 848-49.

[36] *Compare In re Tibbens*, No. 19-80964, 2021 WL 1087260, at *9 (Bankr. M.D.N.C. Mar. 19, 2021) (providing that *Trepetin* follows the "circumstances beyond the debtor's control" test, albeit less strictly than *Seven Stars*) *with In re Wetter*, 620 B.R. 243, 253 (stating that *Trepetin* and *Seven Stars* go in "different direction[s]").

-11-

debtor complied with its obligations under the Code would not be relevant. Those are equitable considerations.

*Caselaw regarding other Code provisions with the same language as § 1189(b).*

As noted above, when § 1189 was enacted, other provisions of the Bankruptcy Code already used the phrase "circumstances for which the debtor should not justly be held accountable"—it was included in § 1221 governing extensions of the time to file a chapter 12 plan,[37] as well as §§ 1228(b)(1) and 1328(b)(1) regarding the grant of a hardship discharge in chapter 12 and 13 cases, respectively. Additionally, § 1188(b) employs the same language as the basis for extending the time to hold a subchapter V status conference.

In both chapters 12 and 13, courts considering whether to grant a debtor a hardship discharge are split on whether to require "catastrophic circumstances" or conduct an equitable inquiry.[38] Catastrophic circumstances is an even higher bar than circumstances beyond the debtor's control because it requires the "most extreme and unusual of circumstances that prevent a debtor from completing payments under the plan" and does not include "purely economic

---

[37] Chapter 12 likewise requires the debtor to file a plan within 90 days after the order for relief and permits the court to extend the 90-day period only if "the need for the extension is attributable to circumstances for which the debtor should not justly be held accountable." § 1221. Calculation of the 90-day period in chapter 12 differs in one respect from the calculation in subchapter V. In chapter 12 cases, the 90-day period begins to run when the chapter 12 case is commenced. In subchapter V cases, the 90-day period begins to run when the case is commenced under chapter 11, not when the subchapter V election is made. § 1189(b). That can make a difference if the chapter 11 debtor does not initially elect subchapter V.

[38] *Compare In re Rouse*, No. 16-05920, 2020 WL 5884514, at *2 (Bankr. E.D.N.C. Oct. 2, 2020) (requiring catastrophic circumstances), *aff'd sub nom. Rouse v. Nutrien Ag Sols., Inc*., No. 20-CV-552, 2021 WL 9848138 (E.D.N.C. July 12, 2021) *with In re Bandilli*, 231 B.R. 836, 840 (1st Cir. BAP 1999) (analyzing equitable considerations); *In re Goldston*, 627 B.R. 841, 861 (Bankr. D.S.C. 2021) (same). *See also In re Martone*, 652 B.R. 245, 249 (Bankr. D.S.C. 2023) ("The Court does not have to decide whether to adopt the 'catastrophic' circumstances approach or require a lesser level of severity under the circumstances of this case because the evidence before it does not support granting a hardship discharge under either approach.").

-12-

reasons."[39] For example, death and disability have been found to constitute catastrophic circumstances.[40] On the other hand, courts making an equitable inquiry consider such things as whether the debtor intended to perform under the plan at the time of confirmation, whether the debtor materially performed under the plan until the occurrence of the intervening events, and the foreseeability and substantiality of the changed circumstances.[41]

In considering whether to extend the time to file a plan under § 1221, courts generally follow the test of whether the circumstances were "beyond the debtor's control." There are only a handful of cases implementing this test, and they do not extensively analyze why "circumstances for which the debtor should not justly be held accountable" means "circumstances beyond the debtor's control."[42]

Cases analyzing § 1188(b) have generally either stated that delay in holding the subchapter V status conference is a concern of the court and not the debtor,[43] and/or they have considered extending the time for the subchapter V status conference under § 1188(b) in conjunction with extending the time to file a plan under § 1189(b).[44] If the delay in holding the

---

[39] *In re Awua*, No. 96-10613, 1997 WL 1524800, at *7 (Bankr. E.D. Va. Feb. 24, 1997).

[40] *In re Nelson*, 135 B.R. 304, 307 (Bankr. N.D. Ill. 1991).

[41] *See Bandilli*, 231 B.R. at 840; *Goldston*, 627 B.R. at 861; *In re Quintyne*, 610 B.R. 462, 469 (Bankr. S.D.N.Y. 2020).

[42] *In re Davis*, No. 16-1390, 2017 WL 3298414, at *3 (9th Cir. BAP Aug. 2, 2017) (unpublished); *In re Gullicksrud*, No. 16-11860, 2016 WL 5496569, at *2 (Bankr. W.D. Wis. Sept. 29, 2016); *First Sec. Bank & Trust Co. v. Vegt*, 511 B.R. 567, 585 (N.D. Iowa 2014); *but see In re Lundberg*, 621 B.R. 561, 562 (Bankr. W.D.N.Y. 2020) (granting extension *nunc pro tunc* more than a year after expiration of the deadline to file a plan and considering various factors without mentioning the "beyond the debtor's control" test).

[43] *In re Keffer*, 628 B.R. 897, 903 (Bankr. S.D.W. Va. 2021) (citing *Wetter*, 620 B.R. at 252); *see also Tibbens*, 2021 WL 1087260 at *5.

[44] *Seven Stars*, 618 B.R. at 343; *Tibbens*, 2021 WL 1087260 at *8-9.

-13-

subchapter V status conference is a concern of the court and not the debtor, then why was "circumstances for which the debtor shall not justly be held accountable" included in § 1188(b)?

The Court does not find the caselaw interpreting the other Code provisions with the language "circumstances for which the debtor should not justly be held accountable" to be conclusive in the context of § 1189(b). The fact that the caselaw is split in the context of hardship discharges is consistent with a split in the caselaw in the context of § 1189(b). As discussed in the following section, the Court will employ the reasoning of *Pioneer* to conclude that § 1189(b) requires the Court to conduct an equitable inquiry.

*This Court adopts an equitable inquiry as the standard for applying § 1189(b).*

This Court finds *Trepetin* persuasive in its conclusion that courts may balance subchapter V goals in considering whether to grant an extension of time to file a subchapter V plan. This Court concludes that determining whether the "need for the extension [of time to file a subchapter V plan] is attributable to circumstances for which the debtor should not justly be held accountable" under § 1189(b) requires the Court to conduct an equitable inquiry.

Bankruptcy courts have long been recognized as courts of equity that apply the principles of equity jurisprudence.[45] As the Supreme Court stated in *Pioneer*, "bankruptcy courts are necessarily entrusted with broad equitable powers to balance the interests of the affected parties, guided by the overriding goal of ensuring the success of the reorganization."[46] But bankruptcy courts may only exercise equitable powers within the confines of the Bankruptcy Code.[47]

The Bankruptcy Code and Rules do not define the term "justly" or provide guidelines for determining whether an extension of time for the debtor to file a plan is needed due to

---

[45] *Young v. United States*, 535 U.S. 43, 50, 122 S. Ct. 1036, 1041, 152 L. Ed. 2d 79 (2002).

[46] *Pioneer*, 507 U.S. at 389, 113 S. Ct. at 1495.

[47] *Law v. Siegel*, 571 U.S. 415, 421, 134 S. Ct. 1188, 1194, 188 L. Ed. 2d 146 (2014).

"circumstances for which the debtor should not *justly* be held accountable" (emphasis added). "Courts properly assume, absent sufficient indication to the contrary, that Congress intends the words in its enactments to carry 'their ordinary, contemporary, common meaning.'"[48] There is no indication in the Code or the limited legislative history of subchapter V that Congress intended any of the words in § 1189(b) to carry a special meaning.[49]

The common meaning of the term "justly," as used in § 1189(a), is defined as "in accordance with justice, law, or fairness."[50] The principles of equity are aimed at securing justice for the parties before the court.[51] As courts of equity, bankruptcy courts are "empowered to invoke equitable principles to achieve fairness and justice in the reorganization process."[52] Like the term "excusable," as used in the "excusable neglect" standard of Rule 9006(b), the term "justly," as used in § 1189(b), allows the Court to take into account all relevant circumstances surrounding the debtor's need for an extension of time to file a plan and to balance the interests of the affected parties. In striking that balance under § 1189(b), the Court should be guided by the overarching goals of subchapter V to (i) provide a process by which debtors may reorganize and rehabilitate their financial affairs,[53] (ii) provide a framework for an expeditious and

---

[48] *Pioneer*, 507 U.S. at 388, 113 S. Ct. at 1495 (quoting *Perrin v. United States*, 444 U.S. 37, 42, 100 S. Ct. 311, 314, 62 L. Ed. 2d 199 (1979)).

[49] The brief legislative history of the Small Business Reorganization Act of 2019 is set forth in H.R. Rep. No. 116-171, at 1-9 (2019), *as reprinted in* 2019 U.S.C.C.A.N. 366, 366-75 (Leg. Hist.).

[50] *Trepetin*, 617 B.R. at 849 (quoting the definition of "justly" in the Oxford English Dictionary Online, *available at* oed.com/view/Entry/102238?redirectedFrom=justly#eid (last visited July 7, 2020)).

[51] *In re Kaiser Aluminum Corp.*, 456 F.3d 328, 340 (3d Cir. 2006).

[52] *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 235 (3d Cir. 2004), *as amended* (Feb. 23, 2005) (quoting *In re Aquatic Dev. Group, Inc.*, 352 F.3d 671, 680 (2d Cir. 2003) (Straub, J., concurring)).

[53] The Small Business Reorganization Act of 2019 "streamline[s] the bankruptcy process by which small business[] debtors reorganize and rehabilitate their financial affairs." H.R. Rep. No. 116-171, at 1 & 5, *as reprinted in* 2019 U.S.C.C.A.N. at 366 & 371.

-15-

economical resolution of the case under subchapter V,[54] and (iii) facilitate the development of a

consensual plan.[55] In striking the proper balance, the Court should give due regard to the

particularly important protection § 1189(b) affords creditors because subchapter V eliminates

various creditor protections available to creditors in chapter 11 cases not governed by

subchapter V.[56] Circumstances surrounding the debtor's need for an extension of time to file a

plan which should be taken into account include whether the need for the extension is within the

debtor's reasonable control and may include such things as the danger of prejudice by granting

or refusing to grant the extension, the length of the extension, the debtor's good faith, the

debtor's progress in formulating a meaningful plan, and the views of creditors as a whole and the

subchapter V trustee.

 Making an equitable inquiry to decide whether to grant an extension under § 1189(b) is

consistent with the Court's discretion elsewhere under subchapter V to affect the duration of the

case prior to confirmation of a plan. Notably, subchapter V imposes no deadline for the court to

hold or conclude the confirmation hearing or to confirm the plan and no guidelines regarding

---

[54] *See* § 1188(a), which requires that the court conduct a status conference in subchapter V cases "not later than 60 days after entry of the order for relief to further the expeditious and economical resolution of a case under this subchapter."

[55] The subchapter V trustee is specifically charged with the duty to "facilitate the development of a consensual plan of reorganization." § 1183(b)(7). In *In re Louis*, No. 20-71283, 2022 WL 2055290, at *16 (Bankr. C.D. Ill. June 7, 2022), the court characterized this duty as the subchapter V trustee's primary duty, citing among other things the UST Program Policy and Practices Manual ("UST Manual"), § 3-17.1.1, p. 189. The UST Manual states: "The legislative purpose of the SBRA was to provide a fast track for small businesses to confirm a consensual plan with the assistance of a private trustee." UST Manual, § 3-17.1.1, p. 189, *available at* https://www.justice.gov/ust/united-states-trustee-program-policy-and-practices-manual (last updated Dec. 30, 2022). *See also In re Channel Clarity Holdings LLC*, No. 21-07972, 2022 WL 3710602, at *6 (Bankr. N.D. Ill. July 19, 2022) ("As the subchapter V trustee, his primary duty is to facilitate development of a consensual plan of reorganization.").

[56] Creditor protections that subchapter V eliminates that are available to creditors in chapter 11 cases not governed by subchapter V include, for example, the absolute priority rule, the right to file a creditor's or committee's plan after the expiration of exclusivity, soliciting votes only after court approval of a disclosure statement, and the right to the appointment of a creditors' committee.

-16-

when the confirmation hearing should be held. The debtor also has the right to modify the plan before the plan is confirmed. *See* § 1193(a). This gives the court discretion to delay the confirmation hearing to give the debtor additional time to modify the plan.[57] If § 1189(b) is read to equate the "need for the extension [being] attributable to circumstances for which the debtor should not justly be held accountable" with the "need for the extension being attributable to circumstances beyond the debtor's control" in a manner that the court cannot take equitable considerations into account, the court could delay the confirmation hearing, if appropriate, to give the debtor more time to file a preconfirmation plan modification. Therefore, the fact that the bankruptcy court has discretion in whether to extend the time to file a plan under § 1189(b) is consistent with the court having discretion elsewhere over the confirmation process.

    *Application of § 1189(b) in this case.*

    Debtor argued that the Court should extend the time until October 23, 2023 for Debtor to file a plan to further the subchapter V goal of providing sufficient time for the development of a consensual plan. Debtor argued further that it has been participating in good faith in the mediation but needs additional time to file a plan because, after reaching agreement with four creditors, it is still engaged in settlement negotiations with the Johnstons and Sacketts. Debtor stated at the Final Hearing that although it could file a plan by September 22, 2023 if required to do so, it would not be a meaningful plan because it would not treat the claims of the Johnstons and Sacketts, who are major creditors.

---

[57] Chapter 12 requires that the confirmation hearing be concluded within 45-days after the plan is filed but gives the court considerable discretion to extend that time for cause. § 1224. In small business chapter 11 cases not governed by subchapter V, the Code imposes a similar 45-day deadline but with two differences. First, in chapter 12 the confirmation hearing must be concluded by the end of the 45-day period whereas in small business cases the plan must be confirmed within that period. *See* §§ 1129(e) & 1224. Second, there is a stricter standard for extending the 45-day period in small business debtor cases. *Compare* §§ 1121(e) & 1129(e) *with* § 1224.

Either or both of the Objecting Parties argued that the Motion to Extend should be denied on the following grounds: (1) subchapter V is intended to be speedy and economical, and Debtor has already received multiple extensions; (2) Debtor has failed to meet its burden of proving that the standard for an extension is met because Debtor did not offer any evidence at the Final Hearing, (3) negotiating with creditors does not constitute "circumstances for which the debtor should not justly be held accountable," (4) Debtor's need for an extension is not due to circumstances beyond Debtor's control because Debtor unduly delayed providing documentation to the Sacketts and Johnstons in the mediation that Debtor needed to provide in order to complete the settlement negotiations, and (5) Debtor admitted that it could file a plan by the existing September 22, 2023 deadline.[58] One of the Objecting Parties urged the Court to apply the four-factor test adopted in *Baker* and argued why the Motion to Extend should be denied under that test. *Baker*, 625 B.R. at 35.

For the reasons stated above, to determine whether Debtor's need for an extension of time to file a plan is attributable to circumstances for which Debtor should not justly be held accountable, the Court will take into account all relevant circumstances surrounding Debtor's need for the extension, balancing the interests of the affected parties. In striking that balance, the Court will be guided by the overarching goals of subchapter V to (i) provide a process by which a debtor may reorganize and rehabilitate its financial affairs, (ii) provide a framework for an expeditious and economical resolution of the case under subchapter V, and (iii) facilitate the

---

[58] The Objecting Parties also argued that the extension should be denied because Debtor is unable to pay its post-petition expenses; Debtor's insiders receive above-market compensation; and the requested extension is beyond the 300-day deadline for a small business debtor to file a chapter 11 plan outside of subchapter V. The Court has considered these arguments and does not consider them significant in the context of this case.

-18-

development of a consensual plan. The Court will give due regard to the particularly important protection § 1189(b) affords creditors.

If the Court were to equate "circumstances for which the debtor should not justly be held accountable" with "circumstances beyond the debtor's control," the Court might deny the requested extension of time in this case. Debtor commenced this case under subchapter V on December 7, 2022, deselected subchapter V on January 4, 2023, and then reselected subchapter V on February 2, 2023 after retaining new bankruptcy counsel. This caused well over a one-month delay. Under *Pioneer*, a debtor is accountable for the acts of its chosen counsel. Further, Debtor bears the burden of proving it should be granted an extension under § 1189(b). It is possible that a delay of another month was caused by Debtor's delay in producing documents to the other parties in the mediation to back up Debtor's offers.[59] Because neither of Debtor's principals was present at the hearing on the Motion to Extend and Debtor presented no testimony, the Court cannot make any findings regarding whether Debtor unduly delayed providing documents in the mediation.[60]

But it does appear that Debtor is close to concluding its negotiations with the Johnstons and Sacketts in an effort to file a consensual plan. The Court already granted several extensions of time for Debtor to file a plan, without objection by any creditors after notice, to allow Debtor

---

[59] The Mediator's report filed July 27, 2023, states: "Documents supporting the Debtor/Swifts' position have been promised by August 7, 2023." The Mediator's report filed September 11, 2023 states: "The mediator is continuing to work with [the Debtor, Johnstons, and Sacketts] . . . The mediator worked with the Swifts extensively in connection with the documentary backup for the Johnston offer. The documents were produced to the Johnstons' counsel last week . . . . With respect to the offer to the Sacketts, the mediator is now working with the Swifts to produce the backup documents. The mediator anticipates that the documents should be ready to produce to the Sacketts by September 21, 2023." It is unclear if these reports are referring to the same documents.

[60] Counsel argued that a principal of Debtor would be unable to testify about the production of documents in the mediation because it would violate the confidential nature of the meditation. But Debtor could have presented generalized testimony about why it took Debtor so long to produce documents without disclosing the purpose of the document production or describing the documents that were produced.

-19-

to file a plan after concluding its negotiations in the mediation and has already extended the deadline for Debtor to file a plan until September 22, 2023. Debtor and six of its major creditors have expended substantial time and effort in the mediation, and it appears the negotiations with the last two creditors are nearing the finish line. Extending the time to file a plan one additional month will not unduly prejudice creditors. On the other hand, the potential prejudice to creditors in shutting the business down could be significant. There is no evidence that Debtor has acted in bad faith. Although Debtor could have filed a placeholder plan by September 22, 2023 and then modified the plan before the confirmation hearing, the more appropriate course of action here is for the Debtor to receive the extension so it can file a meaningful plan designed to be taken to a confirmation hearing.[61]

Based on these circumstances, balancing the interests of the affected parties, with due regard to the particularly important protection § 1189(b) affords creditors, the Court finds and concludes that an extension of the time under § 1189(b) until October 23, 2023 for Debtor to file a plan is warranted by circumstances for which the debtor should not justly be held accountable. The Court, therefore, will grant the Motion to Extend. If Debtor files a plan, the Court expects Debtor to file a plan designed to be taken to confirmation hearing, not a place holder plan. Under the circumstances of this case, the Court will be disinclined to grant any further extensions of time for Debtor to file a plan.

---

[61] *See In re HBL SNF, LLC*, 635 B.R. 725, 730 (Bankr. S.D.N.Y. 2022) ("Like *In re Baker*, it does not appear practical, fair, or wise to require the Debtor to file a plan when the central issue . . . remains unresolved.")

-20-

The Court will enter a separate order reflecting this ruling.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: September 25, 2023

COPY TO:

<u>Counsel for Debtor</u>
Gerald Velarde
Joseph Yar
Scott Cargill
Velarde & Yar
PO Box 11044
Albuquerque, NM 87192

<u>New Mexico Financial &</u>
<u>Family Law, P.C. – Objecting Party</u>
Don Harris
New Mexico Financial & Family Law, P.C.
320 Gold Ave SW, Suite 1401
Albuquerque, NM 87102

<u>Counsel for David Roberts and</u>
<u>Debra Roberts – Objecting Party</u>
Justin R. Sawyer
Moses, Dunn, Farmer & Tuthill, P.C.
PO Box 27047
Albuquerque NM 87125-7047