UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re: TRINITY LEGACY CONSORTIUM, LLC,            No. 22-10973-j11

Debtor.

**<u>MEMORANDUM OPINION</u>**

The United States Trustee ("UST") filed a motion requesting the Court to dismiss or convert this chapter 11 case to chapter 7 under 11 U.S.C. § 1112(b)[1] based on gross mismanagement of the estate, failure to satisfy reporting requirements, and failure to timely confirm a plan of reorganization.[2] After holding a two-day evidentiary hearing, with a continuation of the hearing scheduled for July 1, 2025, Trinity Legacy Consortium, LLC ("Debtor") conceded that "cause" exists to dismiss or convert this chapter 11 case and consented to the dismissal of this bankruptcy case. The UST agrees to dismissal, and other administrative expense claimants prefer dismissal over conversion. However, before dismissing a chapter 11 case for "cause," the Court must evaluate whether dismissal or conversion is in the best interests of all creditors and the estate even if all parties appearing before the Court request dismissal.[3] For the reasons explained below, the Court finds and concludes that dismissal, rather than

---

[1] References to Section, "§," or "§§" are to title 11 of the United States Code, 11 U.S.C.
[2] *See* Motion to Convert or Dismiss for Continuing Loss to the Estate, Gross Mismanagement, Failure to Satisfy Reporting Requirements, and Failure to Timely Confirm a Plan ("Motion to Dismiss or Convert" – Doc. 555).
[3] *See In re Renewable Energy, Inc.*, BAP No. WW-15-1089-KuJuTa, 2016 WL 7188656, at *3 (9th Cir. BAP Dec. 9, 2016) ("The bankruptcy court has an independent duty to consider the impact of dismissal and conversion and to decide which alternative is in the best interest[s] of all creditors [and the estate]."); *In re ARS Analytical, LLC*, 433 B.R. 848, 861-62 (Bankr. D.N.M. 2010) ("[I]f cause has been demonstrated (and whether or not the motion is opposed), the court must ascertain whether the best interests of creditors and the estate are served by granting or denying the motion." (quoting *In re Modanlo*, 413 B.R. 262, 271 (Bankr. D.Md. 2009))).

conversion, is in the best interests of creditors as a whole and the estate. The Court will, therefore, grant the Motion to Dismiss or Convert and dismiss this chapter 11 proceeding.

PROCEDURAL HISTORY[4]

Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code on December 7, 2022, and elected treatment under subchapter V.[5] On January 4, 2023, Debtor amended its voluntary petition to deselect subchapter V.[6] Debtor retained new counsel on February 2, 2023,[7] and on the same date filed a second amended petition reselecting subchapter V.[8] In April of 2023, Debtor filed a motion to convert to chapter 7 (which was later withdrawn)[9] based on Debtor's consistent failure to meet its projected revenue targets and its unprofitable business operations.[10]

At a status conference held May 1, 2023, the Debtor and several creditors agreed to participate in mediations in the hope that Debtor would be able to file a consensual subchapter V plan instead of converting the case to chapter 7.[11] The Court entered a mediation order on the same day appointing the Honorable David T. Thuma as mediator.[12] The following creditors participated in the mediations: Levi and Jennifer Harmon, Mark and Shawn Johnston, Michael and Diane Sackett, Joseph Nance, Teresa Porter, Mark Applebaum, Virginia Squier, and Chambers Squier, Enercept, Inc., and Builders FirstSource.[13] The first mediation sessions resulted in settlements between the Debtor's principals, Jacob Swift and Jan Swift, and the

---

[4] Facts included in the Procedural History section of this Memorandum Opinion are adopted as part of the Court's fact findings made pursuant to Fed. R. Bankr. P. 7052.
[5] Doc. 1.
[6] Doc. 79.
[7] Doc. 108.
[8] Doc. 113.
[9] Doc. 223.
[10] Doc. 212.
[11] Doc. 216.
[12] Doc. 217.
[13] *Id.*

following: 1) the Harmons; 2) Mr. Applebaum; 3) Joseph Nance and Theresa Porter; and 4) Chambers Squier-Okonzak and Wesley Okonzak.[14] Those settlements had the effect of eliminating or substantially reducing the claims of Builders FirstSource and Enercept, Inc. against the estate.[15]

After obtaining several extensions,[16] Debtor filed its first Subchapter V Plan on October 23, 2023.[17] Debtor filed a first amended Subchapter V plan on November 8, 2023.[18] Since then, Debtor has further amended its plan four times.[19] The latest plan is Debtor's Fifth Amended Chapter 11 Subchapter V Plan, Dated February 28, 2025 ("Fifth Amended Plan" – Doc. 527).

Debtor filed two adversary proceedings, and removed one state court action to this Court, initiating a third adversary proceeding: 1) Adversary Proceeding No. 23-1027-j ("Declaratory Judgment Action" seeking declaratory judgment against the following customers: Mark Applebaum, Levi and Jennifer Harmon, Joseph Nance, Theresa Porter, Michael and Dianne Sackett, and Mark and Shawn Johnston); 2) Adversary Proceeding No. 24-1020-j (the "Removed State Court Action"); and 3) Adversary Proceeding No. 25-1019-j ("Maggi Action" – asserting claims against Robert and Heather Maggi for breach of contract, quantum meruit, account stated, false reporting of a crime, negligence per se, intentional interference with contractual relations, intentional interference with prospective business/advance contractual relations, defamation perse, abuse of process, and extreme and outrageous conduct). Debtor reached a settlement with

---

[14] Doc. 242.
[15] Doc. 298. Enercept, Inc. later withdrew its claim against the estate. Doc. 266.
[16] *See* Doc. 240 (extending deadline to July 10, 2023); Doc. 254 (extending deadline to August 24, 2023); Doc. 262 (extending deadline to September 22, 2023); Doc. 289 (extending deadline to October 23, 2023).
[17] Doc. 303.
[18] Doc. 325.
[19] Doc. 406 (Second Amended Plan); Doc.432 (Third Amended Plan); Doc. 522 (Fourth Amended Plan); Doc. 527 (Fifth Amended Plan).

3

the following Defendants named in the Declaratory Judgment Action: Mark Applebaum, Levi Harmon and Jennifer Harmon, Joseph Nance and Theresa Porter as part of a court-ordered mediation.[20] The Sacketts' claim was disallowed.[21] The Johnstons filed an unsecured claim in the amount of $2,833,499.62, of which $6,700.00 is claimed as a priority claim.[22] Through mediation, the Debtor ultimately settled the Johnstons' claim for $125,000, payable by the Debtor's principals, Jan Swift and Jacob Swift.[23]

In connection with the Removed Action, the Court set an extended administrative expense claims bar date in the bankruptcy case to give Studs Lumber LLC ("Studs Lumber"), James Duke d/b/a Target Rental ("Target Rental") and The Robert E. Maggi Qualified Personal Residence Trust ("Maggi Trust") an opportunity to file an application for approval of administrative expense claim in the Debtor's bankruptcy case.[24] Studs Lumber and Target Rental each timely filed an application for approval of administrative expense claim and obtained orders allowing administrative expense claims.[25] Studs Lumber holds an allowed administrative expense claim in the amount of $50,106.43.[26] Target Rental holds an allowed administrative expense claim in the amount of $72,930.70.[27] The Maggi Trust did not timely file a motion to approve administrative expense claim.

Debtor filed the Maggi Action on May 19, 2025.[28] Defendants in the Maggi Action filed a motion to dismiss the complaint.[29] The Maggi Action remains pending.

---

[20] Doc. 242 and Doc. 298.
[21] Doc. 360.
[22] Claim No. 21-1.
[23] Doc. 299 and Doc. 333.
[24] Doc. 467.
[25] Doc. 484, Doc. 486, Doc. 499, and Doc. 500.
[26] Doc. 500.
[27] Doc. 499.
[28] Maggi Action – Doc. 1.
[29] Maggi Action – Doc. 4.

Several of the Debtor's customers filed applications for approval of administrative expense claims: Brandon Kennedy and Haley Kennedy, asserting an administrative expense claim in the amount of $96,533.45;[30] Phillip McKinney, asserting an administrative expense claim in the amount of $18,989.88;[31] Emily Berger, asserting an administrative expense claim in the amount of $271,050.00;[32] Brian Schneider and Katherine Schneider, asserting an administrative expense claim in the amount of $111,075.00;[33] and Kevin and Holly Carpenter, asserting an administrative expense claim in the amount of $414,659.21.[34] Another potential administrative expense claimant, Joe Alba, obtained an extension of the deadline to file an application for approval of administrative expense claim through June 30, 2025.[35]

Debtor and the Schneiders engaged in mediation[36] but did not reach a settlement of the Schneiders' administrative expense claim. Debtor and Emily Berger also engaged in mediation which resulted in a settlement between the Swifts and Ms. Berger.[37] Debtor later sought to modify the settlement with Emily Berger to provide for payment of a lesser amount from the bankruptcy estate, but withdrew that motion.[38]

The UST filed the Motion to Dismiss or Convert on April 22, 2025.[39] The Subchapter V Trustee joined in the motion, requesting dismissal rather than conversion.[40] The Court held a final, evidentiary hearing on the Motion to Dismiss or Convert on May 23, 2025, and on May 30,

---

[30] Doc. 348.
[31] Doc. 381.
[32] Doc. 436.
[33] Doc. 466.
[34] Doc. 537.
[35] Doc. 591.
[36] Doc. 512.
[37] Doc. 456 and Doc. 491.
[38] Doc. 589 and Doc. 595.
[39] Doc. 555.
[40] Doc. 603.

5

2025, and had scheduled a continued final hearing on July 1, 2025, to complete the presentation of evidence. Rather than completing the hearing on the Motion to Dismiss or Convert, at which one of its principals likely would invoke his Fifth Amendment right not to testify, Debtor conceded at a status conference held June 26, 2026, that "cause" existed to dismiss or convert this case, and consented to dismissal of this bankruptcy case. The UST agreed that dismissal is appropriate. Several administrative expense claimants present at the status conference, through counsel (namely, Kevin A. Carpenter, Holly Carpenter, Joe Alba, Katherine Marie Schneider and Brian Schneider) and Brandon Kennedy and Haley Kennedy, who hold a prepetition unsecured claim, likewise expressed a preference for dismissal rather than conversion of this case to chapter 11.

At the request and with the consent of the parties, the Court agreed to forego an additional evidentiary hearing and instead will base its decision whether dismissal or conversion is in the best interests of creditors and the estate on documents filed of record in this bankruptcy case. By stipulation of the parties, those documents (including Debtor's monthly operating reports, schedules, and statement of financial affairs and any amendments thereto, and the liquidation analysis attached to Debtor's Fifth Amended Plan) are admitted as substantive evidence for purposes of the Court deciding whether conversion or dismissal is in the best interests of creditors and the estate.

FACTS

Debtor operates a construction and home building business building custom log and timber frame houses primarily in New Mexico and Colorado. Post petition, in 2024, Debtor changed its business model to focus primarily on design and the manufacture and supply of

6

building materials and components assembled for custom home construction projects rather than general contracting.

Several of Debtor's creditors are Debtor's former customers. The claims register reflects claims of nearly $5,000,000, of which approximately 95% are unsecured claims. Debtor scheduled assets with a total value of less than $300,000, including nine trucks, six trailers, a skid steer, and a mini excavator. Debtor also scheduled tools, equipment, and machinery with a total value of $86,700.[41] Although not listed on Schedule A/B, Debtor disclosed in its Statement of Financial Affairs ("SOFA") real property titled in Jacob Swift's name that the Debtor uses as a mill site (the "Mill Property").[42] Debtor and Mr. Jacob Swift agree that the Mill Property belongs to the Debtor. The Debtor valued the Mill Property at $116,525.[43] The Small Business Administration ("SBA") claims a blanket lien on all of the Debtor's assets to secure its claim of $163,885.27.[44]

Debtor's most recent monthly operating report for the period ending April 30, 2025, reflects an opening balance of $149,002.26 in all accounts, total cash receipts of $252,948.19, and total disbursements of $70,930.37, for total cash on hand in the amount of $331,020.88 as of month end.[45] Debtor accounts for customer deposits for ongoing projects by tracking and labeling them in its accounting software. Of the current total cash on hand, it is likely that a significant portion is from customers and earmarked for each customer's project. The total

---

[41] Doc. 206 – Amended Schedules.
[42] Doc. 1, p. 33.
[43] *Id.*
[44] Debtor scheduled SBA's claim in the amount of $150,000. Doc. 1, p. 20. SBA's proof of claim asserts a claim in the amount of $163,885.27. Claim No. 2-1. Debtor's liquidation analysis attached to its Fifth Amended Plan states that the SBA's claim is $130,481.00. Doc. 527-2. Debtor made post-petition adequate protection payments to the SBA during the pendency of this bankruptcy case. For purposes of this Memorandum Opinion, the Court will accept the Debtor's valuation of the SBA's claim as stated its liquidation analysis and refer to the SBA's claim as a claim in the amount of $130,481.00.
[45] Doc. 579.

amount of payables reflected on the April 2025 MOR is $280,171.84. Debtor's reported receivables have remained at $674.95 for several months.[46] The static accounts receivable figure is due to Debtor's cash accounting practice. Debtor has paid professional fees totaling $238,870.03 since the filing of the case.[47]

Debtor was able to settle claims with several of its creditors; most of those settlements provided for Debtor's principals, Jan Swift and Jacob Swift, rather than the Debtor, to pay the settlement amounts.[48] Emily Berger's claim, originally asserted as an administrative expense claim, was initially settled by agreement, but now remains unresolved.[49]

The total amount of the administrative expense claims asserted by Debtor's post-petition customers exceeds $900,000.[50] The Carpenters' administrative expense claim in the amount of

---

[46] Exhibit 1 - MORs from September 2024 through March 2025.
[47] Doc. 579.
[48] *See, e.g.,* Final Report of Mediator (Doc. 298) reporting the settlement of claims by the Harmons, Mr. Appelbaum, Joseph Nance and Theresa Porter, and the [Squier]/Okonzaks. *See* Doc. 354 and Doc. 384 (approving settlement of claim filed by David and Debra Roberts against the Debtor in the amount of $549,783.90 through a payment of $90,000 by Debtor's principals, Jan Swift and Jacob Swift).
[49] *See* Doc. 436 (asserting an administrative expense claim of $271,050.00); Doc. 495 and Doc. 506 (settling the claim through an investor payment of $400,000 to Ms. Berger); Doc. 589 (reporting that the investor payment fell through and seeking approval of a revised settlement); Doc. 595 (withdrawing motion to modify prior settlement).
[50]

| Administrative Expense Claimant | Amount of Claim |
|---|---|
| Brian and Katherine Schneider | $111,075.00 (Doc. 466) |
| Kevin and Holly Carpenter | $414,659.21 (Doc. 537) |
| Brandon and Haley Kennedy | $96,533.45 (Doc. 348) later settled as a non-priority unsecured claim in the amount of $144,317.61 (Doc. 427) |
| Joe Alba | $212,882.80 (Doc. 568) requesting an extension of the deadline to assert an administrative expense claim; no motion for allowance of administrative expense claim has yet been filed |
| Target Rental | $72,930.70 (allowed) (Doc. 499) |
| Studs Lumber | $50,106.43 (allowed) (Doc. 500) |
| Emily Berger | $271,050.00 (Doc. 436) later settled through an agreement for investor to pay $400,000 to Berger (Doc. 495), which eventually fell through (Doc. 589) |

8

$414,649.21 has not been resolved. Nor has the Schneiders' administrative expense claim in the amount of $111,075.00 been resolved. Joe Alba's potential administrative expense claim is over $200,000.

The administrative expense claims of Studs Lumber, LLC in the amount of $50,106.43 and James T. Duke Inc. d/b/a Target Rentals in the amount of $72,930.70 have been allowed.[51] In addition, New Mexico Financial & Family Law, P.C., Debtor's former counsel, holds an allowed administrative expense claim in the amount of $30,933.18.[52] The total amount of the unpaid allowed administrative expense claims is more than $150,000.00. In addition, Debtor has incurred additional attorneys' fees after February 28, 2025, for which no application for allowance of compensation has yet been field.

Although the Kennedys initially asserted an administrative expense claim, Debtor and the Kennedys reached a settlement that granted the Kennedys an allowed non-priority unsecured claim in the amount of $144,317.51.[53]

Debtor's liquidation analysis attached to its Fifth Amended Plan reflects total assets in the amount of $258,840.05 including financial accounts and cash in the amount of $135,995.05, and secured claims in the total amount of $179,965.75, including the secured claim of the Small Business Association in the amount of $130,481.00, the secured claim of Forward Finance in the amount of $37,484.75, and the secured claim of John Deere in the amount of $12,000.00.[54] It reports chapter 11 administrative expenses for attorneys' fees of its current and former counsel and the subchapter V trustee in the amount of $61,000, and allowed administrative expense

---

[51] Doc. 499 and Doc. 500.
[52] Doc. 235.
[53] Doc. 427.
[54] Doc. 527-2.

claims in the amount of $123,037.13, for a total of $184,037.13 in anticipated administrative expense claims. Those figures do not include the administrative expense claims of the Schneiders, the Carpenters, or Mr. Alba. If the estate were liquidated under chapter 7, the Debtor's liquidation analysis reports a 0% distribution to creditors holding unsecured non-priority claims.[55]

DISCUSSION

Dismissal or conversion of a chapter 11 case is governed by 11 U.S.C. § 1112(b), which provides, in relevant part:

> [O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b).

Dismissal or conversion under § 1112(b) "requires a two-step process in which the court first determines whether there is 'cause' to convert or dismiss, and next chooses between conversion and dismissal based on the 'best interest[s] of creditors and the estate.'" *In re Am. Cap. Equip. LLC*, 688 F.3d 145, 161 (3d Cir. 2012) (quoting § 1112(b)). The Court is obligated to weigh conversion versus dismissal to determine which is the better choice,[56] even if the Debtor concedes that "cause" exists to dismiss or convert,[57] and regardless of whether a motion only

---

[55] *Id.*
[56] *See In re Sullivan*, 522 B.R. 604, 613 (9th Cir. BAP 2014) (recognizing that the bankruptcy court has an independent duty to evaluate the effect of dismissal and conversion); *Renewable Energy*, 2016 WL 7188656, at *3 ("The bankruptcy court has an independent duty to consider the impact of dismissal and conversion and to decide which alternative is in the best interest[s] of all creditors [and the estate]."); *ARS Analytical,* 433 B.R. at 862 (the court must determine what is in the best interests of the estate and creditors when deciding whether to grant or deny a motion to dismiss or convert for cause).
[57] *See Renewable Energy,* 2016 WL 7188656, at *2 (evaluating dismissal versus conversion even after debtor conceded that cause to dismiss existed).

10

requests dismissal[58] or all parties who have expressed an opinion favor one option over the other.[59]

Debtor concedes, and the movants agreed, that "cause" exists to dismiss or convert this chapter 11 case. Step one has thus been established. For step two, evaluating whether conversion or dismissal is in the best interests of the estate and all creditors, Courts have developed a non-exhaustive list of factors it may consider, which include:

> (1) whether some creditors received preferential payments, [and] whether equality of distribution would be better served by conversion rather than dismissal;
> (2) whether there would be a loss of rights granted in the case if it were dismissed rather than converted;
> (3) whether the debtor would simply file a further case upon dismissal;
> (4) the ability of the trustee in a chapter 7 case to reach assets for the benefit of the creditors;
> (5) in assessing the interests of the estate, whether conversion or dismissal would maximize the estate's value as an economic enterprise;
> (6) whether any remaining issues would be better resolved outside the bankruptcy forum;
> (7) whether the estate consists of a 'single asset;'
> (8) whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests;
> (9) whether a plan had been confirmed and whether any property remains in the estate to be administered; and
> (10) whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.

*In re Sandia Resorts, Inc.*, 562 B.R. 490, 495–96 (Bankr. D.N.M. 2016) (quoting *In re Pettingill Enters., Inc.*, No. 11-12-10515 JA, 2013 WL 5350789, at *7 (Bankr. D.N.M. Sept. 23, 2013)).

---

[58] *In re Superior Siding & Window, Inc.*, 14 F.3d 240, 243 (4th Cir. 1994) ("Though the movant seeks dismissal, § 1112(b) requires a determination of whether dismissal or conversion in in the best interests of creditors and the estate." (quoting *In re Gilbert Broadcasting Corp.*, 54 B.R. 2, 5 (Bankr. D.N.J. 1984))); *In re Graphic Trade Bindery, Inc.*, No. 12-13189-TJC, 2012 WL 12320989, at *5 (Bankr. D.Md. Apr. 12, 2012) ("[T]he mere fact that a section 1112(b) motion seeks only conversion is no bar to dismissal if the court determines that dismissal is in the best interest of the creditors and the estate. The opposite is also true. The task of the bankruptcy court is to determine which option is the better choice.")
[59] *Superior Siding*, 14 F.3d at 243 (stating that the best interests of creditors test "is not served by merely tallying the votes of the unsecured creditors and yielding to the majority interest."); *In re BTS, Inc.*, 247 B.R. 301, 311 (Bankr. N.D. Okla. 2000) ("In determining whether to convert or dismiss a case, this Court is to make a determination as to what is in 'the best interests of creditors and the estate,' and not to act as a mere counter of votes." (quoting § 1112(b))).

11

Three additional factors are:

> (11) The prospect of payment of any unpaid secured claims, chapter 11 administrative claims, priority claims and nonpriority unsecured claims in a converted chapter 7 case or after dismissal;
> (12) Whether conversion to chapter 7 would result in bankruptcy powers and procedures being used to benefit secured creditors without providing a material benefit to other creditors; and
> (13) Any other prejudice to parties in interest resulting from conversion or dismissal.

*Sandia Resorts,* 562 B.R. at 496.

The Court may also take into account the preferences of creditors and the Debtor when determining whether dismissal or conversion is in the best interests of creditors and the state. *Id.* at 496 ("The Court may also consider the preferences expressed by the parties in interest, especially neutral third-parties such as the United States Trustee."). Further, because the Court must take into account the effect of dismissal on *all* creditors, it is appropriate to consider creditors' preferences regardless of whether such creditors filed responses to the movant's motion to dismiss or convert. The Court may not, however, dismiss or convert a case simply based on a majority preference. *BTS, Inc.*, 247 B.R. at 311 (the court must "not act as a mere counter of votes" in choosing between dismissal and conversion); *Superior Siding*, 14 F.3d at 243 (stating that the best interests of creditors test "is not served merely by tallying the votes of the unsecured creditors and yielding to the majority interest.").

Ultimately, the Court has broad discretion to determine whether to dismiss or convert a chapter 11 case (or to appoint a trustee) upon a finding of "cause." *See In re La Trinidad Elderly LP SE,* No. 19-01830 (ESL), 2019 WL 4410547, at *6 (Bankr. D. P.R. Sept. 13, 2019) ("The legislative history shows that Congress intended to invest the bankruptcy court with 'wide discretion . . . to make an appropriate disposition of the case' and 'to consider other factors as

12

they arise, and use its equitable powers to reach an appropriate result in individual cases.'" (quoting *In re De Jounghe*, 334 B.R. 760, 770) (1st Cir. BAP 2005))); *In re Reg'l Evangelical All. of Churches, Inc.*, 592 B.R. 375, 389 (Bankr. D. Kan. 2018) ("In the end the determination is a matter for sound judicial discretion." (quoting *In re Staff Inv. Co.*, 146 B.R. 256, 260 (Bankr. E.D. Ca. 1992))). After weighing the relevant factors, the Court concludes that dismissal rather than conversion is in the best interests of creditors and the estate.

*The prospect of paying creditors in a converted chapter 7 case, challenges for a chapter 7 trustee, and equality of distribution concerns*

A chapter 7 trustee likely would have limited resources to work with. It is likely that much of the cash on hand in Debtor's bank accounts is attributable to customer deposits which cannot be used to pay the expenses of administering a chapter 7 bankruptcy estate. The SBA claims a blanket lien on all the Debtor's assets to secure its claim of $138,481.00,[60] although the lien likely does not extend to the Mill Property currently not titled in the name of the Debtor, which the Debtor valued at $116,525. A chapter 7 trustee would be tasked with liquidating the unresolved administrative expense claims and prosecuting or defending the pending adversary proceedings (including the unresolved Maggi Action), which likely would be a significant expense to the chapter estate and very well could exceed the aggregate value of the unencumbered assets available to the trustee.

It does not appear that there would be sufficient assets in the converted chapter 7 estate for the trustee to make significant payment, if any, to chapter 11 administrative expense claimants, and there is virtually no prospect for a distribution to holders of unsecured claims. The unpaid allowed administrative expense claims alone total more than $150,000. This figure does not include the anticipated legal fees incurred by

---

[60] This is the amount of SBA's claim listed in the Debtor's liquidation analysis. Doc. 527-2.

13

Debtor's counsel in the amount of $31,000 reported in Debtor's liquidation analysis, which have not yet been allowed. Further, the unresolved administrative expense claims total more than $700,000. Following conversion, the chapter 11 administrative expense claims will be subordinated to chapter 7 administrative expenses.[61]

Further, equality of distribution would not be better served by conversion. If there would be few assets for a chapter 7 trustee to distribute equality of distribution becomes a nonissue.

These factors, considered together, weigh heavily in favor of dismissal.

*Maximizing the estate's value as an economic enterprise, plan confirmation, loss of rights, and the potential resolution of issues outside of bankruptcy*

Debtor has not confirmed a plan; consequently, there are no rights under a confirmed plan at risk if the case is dismissed or converted. Several of the settlements with Debtor's creditors provide for payment by the Swifts rather by the Debtor. Those settlements may have already been funded. For those creditors dismissal or conversion makes no difference. However, if the case is converted to chapter 7, Debtor's business will cease, and so too will the prospect for payment of unpaid administrative and unsecured claims from any ongoing business operations.

On the other hand, if the case is dismissed, the Debtor may decide to continue with its plans to operate under its changed business model, which could generate income to pay existing creditors. In general, creditors have a better prospect of being paid if this case is dismissed instead of being converted to chapter 7.

---

[61] *See* § 726(b) ("in a case that has been converted to . . . chapter [7] . . . a claim allowed under section 503(b) of this title incurred under this chapter after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other chapter of this title"); *In re Rocky Mountain Refractories*, 205 B.R. 307, 315 (Bankr. D. Utah 1996) ("[A]dministrative expense claims allowed under section 503(b) are afforded first priority, subject to the limitations on chapter 11 administrative expense claims which are subordinated to chapter 7 administrative expense claims under section 726(b)." (citing §§ 503(b), 507(a) & 726(a)(1) & (b)), *aff'd* 208 B.R. 709 (10th Cir. BAP 1997).

14

*The preferences of the UST, Debtor, and other parties in interest*

Finally, the Debtor, the UST, and the administrative expense claimants present at the status conference (who represent a significant portion of those claimants) all favor dismissal over conversion. The subchapter V trustee's joinder in the Motion to Dismiss or Convert recommended dismissal rather than conversion.[62] The chapter 11 administrative expense claimants believe that the best chance of recovering on their claims is if the case is dismissed. So do the Kennedys, who agreed to treatment of their potential administrative expense claim as a non-priority unsecured claim. This factor thus also weighs in favor of dismissal rather than conversion.

*The other factors*

The other factors in the list either do not apply or do not outweigh the factors that weigh in favor of dismissal.

## CONCLUSION

Having considered the relevant factors, it is not a close call. Dismissal, not conversion, is in the best interests of creditors and the estate. In the exercise of its sound discretion and having weighed the relevant factors, the Court concludes that dismissal is in the best interests of creditors and the estate. The Court will enter a separate order dismissing this chapter 11 bankruptcy case.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: July 7, 2025

---

[62] Doc. 603.

COPY TO:

Mary L. Johnson
DOJ-Ust
PO Box 608
Albuquerque, NM 87103

Scott Cargill
Joseph Yar
Attorneys for Debtor
Velarde & Yar
4004 Carlisle Blvd NE, Suite S
Albuquerque, NM 87107

Christopher M Gatton
Attorney for Mark and Shawn Johnston, Emily Berger, Brian and Katherine Schneider, Kevin and Holly Carpenter, and Joe Alba
Gatton & Associates, P.C.
10400 Academy NE, Suite 350
Albuquerque, NM 87111

Shay Elizabeth Meagle
Attorney for Brandon and Haley Kennedy
Slingshot, LLC
6801 Jefferson St. NE, Suite 210
Albuquerque, NM 87109